# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:14-cr-73-HSM-WBC |
| | ) | |
| ADRIAN LEBRON O'KELLEY | ) | |
| | ) | |

## REPORT and RECOMMENDATION

### I. Introduction

Defendant Adrian Lebron O'Kelley, who is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), moves to suppress evidence of firearms discovered in a black backpack [Doc. 13]. This matter is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reason stated herein, the undersigned finds the defendant had no legitimate expectation of privacy in the backpack, and it is RECOMMENDED that the motion to suppress be DENIED.

### II. Facts

Sgt. Scott Crider of the Chattanooga Police Department (CPD) was the only witness to testify at the evidentiary hearing held on August 25, 2014 on defendant's motion to suppress. I observed his demeanor and found him to be credible. He testified as follows:

He has been employed with CPD since 1995 and became a sergeant in 2013. His normal patrol area is known as the "Bravo" zone in downtown Chattanooga, an area known as a high crime area.

1

On October 10, 2013, at 3:10 a.m., he received a "disorderly" call at an address in an apartment complex known for frequent problems. As he approached the apartments in his patrol car, a vehicle sped out of an alley. Because of its speed, it immediately drew Crider's attention, and he suspected it had something to do with the "disorderly" call. He noticed two occupants in the car as it drove past him. Crider made a u-turn and began to follow it. The vehicle entered Highway 27 moving fast. By the time Crider entered Hwy 27, the vehicle was not in sight. Traffic was extremely light. It took Crider about ten seconds driving at 100 mph to catch back up to the vehicle. It exited Highway 27 at the Broad Street exit and headed westbound on 26th Street where Crider observed it turn into a Raceway gas station. Crider drove past the Raceway until he could no longer see the vehicle; then he made a u-turn and headed back toward the Raceway. When he was driving back toward the Raceway, he observed the same vehicle coming out of the Raceway onto the street. Crider followed the vehicle about 2 blocks and paced it with his patrol car traveling 45 mph in a 35 mph zone. Crider testified his patrol car's speedometer had been calibrated when the patrol car was new, and the patrol car had about 50,000 miles on it at that time.

After pacing the vehicle for a couple of blocks, Crider "bluelighted" the vehicle for speeding. Before the vehicle came to a complete stop, the defendant jumped out clutching what appeared to be a black backpack and began running. Crider stopped his patrol car in front of the vehicle and began a foot chase after the defendant. The defendant ran across a vacant lot toward a tree line and fell. Crider ordered him to stay down, but the defendant jumped back up without the backpack and began running again. When he fell again, defendant stayed down, and Crider was able to catch up to him. By this time, other officers had arrived on the scene, and Crider turned defendant over to them so that he could return to the vacant lot and look for the backpack.

2

He located the backpack about five feet from the spot where the defendant had fallen the first time. There were firearms inside the backpack.

III. Analysis

Defendant argues that Sgt. Crider did not have sufficient reason to conduct a traffic stop and that even if he did, he did not have sufficient reason to detain him after he (the defendant) exited the vehicle. Further, defendant contends that the black backpack was not his and he did not carry it with him as he left the vehicle. (Defendant's brief at 4, Page ID # 29).

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. Amend IV. A police officer may lawfully conduct a traffic stop of a vehicle for which he has probable cause to believe the driver has committed a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc). Sgt. Crider had probable cause to believe that a traffic violation had occurred when he stopped the vehicle in which defendant was traveling for speeding. Sgt. Crider testified his patrol car's speedometer had been calibrated when the patrol car was new and it had only about 50,000 miles on it when Crider made the stop. I conclude the patrol car's speedometer was sufficiently accurate to give Crider probable cause to believe the vehicle was speeding. Whether Crider suspected the occupants of the vehicle of some other criminal activity is immaterial since the vehicle was not detained until after Crider had probable cause to believe a traffic violation had occurred. *Whren*, 517 U.S. at 813 (instructing courts to disregard an officer's subjective intentions and to focus instead on determining whether the traffic stop itself was supported by probable cause); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (a police officer may conduct "a traffic stop for any traffic infraction, even if the police officer's true motive is to detect more extensive criminal conduct.")

When the vehicle was detained, everyone in the vehicle was seized for Fourth Amendment purposes. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *Brendlin v. California*, 551 U.S. 249, 255 (2007). Because Crider had probable cause to believe the driver was speeding, the traffic stop of the vehicle did not violate defendant's Fourth Amendment rights. *Arizona,* 555 U.S. at 327 (holding that where police make a legal traffic stop, "it is lawful for the police to detain an automobile and its occupants pending inquiry into a vehicular violation"); *United States v. McDaniel*, 371 Fed. Appx. 617, 620 (6th Cir. 2010) (same).

After the vehicle was detained, defendant jumped out and started running. At this point he was no longer detained by police. He was not detained again until he fell down the second time when he submitted to Crider's demands that he stop running and allowed himself to be captured. *See California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, the Supreme Court held an officer's chasing the defendant while demanding defendant stop did not constitute a detention. *Id.* at 625-629. Rather, the defendant was detained within the meaning of the Fourth Amendment only when the officer tackled the defendant. *Id.* at 629. The Supreme Court clarified that merely demanding a fleeing person stop, without that person's submission to the show of authority, does not constitute a seizure. *Id.* at 625-629. In sum, "[t]here can be no arrest without either touching or submission." *Id.* at 626-27; *see also United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) (holding that *Hodari D.* established the rule that "when a suspect refuses to submit to a show of authority by the police, the suspect is not seized by the police until such time as he or she submits or is forced to submit to police authority.")

When the defendant discarded the backpack, he was still running from Crider and was not detained. Therefore, defendant effectively abandoned the backpack, and consequently, its recovery by police after defendant's detention did not constitute a "seizure" of the backpack

4

within the meaning of the Fourth Amendment. *See Hodari D.*, 499 U.S. 628-29 (holding that when defendant threw onto the ground a rock of crack cocaine during a foot chase with police immediately before he was tackled, he abandoned the rock of crack cocaine and his motion to suppress was properly denied) (citing *Hester v. United States*, 265 U.S. 57 (1924) (holding no seizure within the Fourth Amendment occurred when revenue agents picked up and examined containers dropped by moonshiners during a pursuit by revenuers because the moonshiners abandoned the containers when they dropped them.)) *See also Martin*, 399 F.3d at 752-53 (holding defendant abandoned revolver when he dropped it while being chased by police and motion to suppress was properly denied). Once O'Kelley dropped the backpack during the chase, he abandoned it, and his motion to suppress is properly denied.

Further, defendant also asserts he never possessed the backpack and that the backpack did not belong to him. Fourth Amendment rights are personal rights and they cannot be asserted vicariously, *Rakas v. Illinois*, 439 U.S. 128, 133 (1978), and, as a consequence, defendant has no basis to seek suppression of the evidence found in the black backpack. As the Supreme Court explained, a defendant seeking to suppress

> … evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman, supra*, 394 U.S., at 174, 89 S.Ct., at 966. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Id.* at 134; *see also United States v. Davis*, 430 F.3d 345 (6th Cir. 2005) (absent a proprietary or possessory interest in the thing searched, a defendant has no legitimate expectation of privacy in the thing searched and therefore has no standing to assert a claim for violations of his Fourth Amendment rights arising from the search) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). A

5

defendant challenging the legality of a search bears the burden to prove he has a legitimate expectation of privacy in the thing searched. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001) (citing *United States v. Salvucci*, 448 U.S. 83, 86 (1980); *United States v. Pino*, 855 F.2d 357, 360 (6th Cir.1988), *amended by* 866 F.2d 147 (6th Cir.1989)). In this instance, defendant O'Kelley specifically disavows a proprietary or possessory interest in the black backpack and thus has no basis to assert a violation of his Fourth Amendment rights arising from the search of the backpack.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[1] that defendant's motion to suppress the evidence of the firearms found in the backpack (Doc. 13) be DENIED.

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).